UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MISSOURI

PAUL GOGGINS
and
KATHY GOGGINS
          Plaintiffs,
vs.

EDDIE L. LOVE
Serve:
      2783 HICKORY PT LANE, APT. 4
      MEMPHIS, TN, 38114

and

CALHOUN TRANSPORT LLC
Serve:
      c/o (Secretary of State)
      600 West Main
      Jefferson City, MO 65101

      Defendants.

Case No: 19-L-

## **COMPLAINT**

Plaintiffs Paul and Kathy Goggins, for their cause of action against Defendants Calhoun Transport ("Calhoun"), and Eddie Love ("Love"), state as follows to the Court:

### **COUNT I – PAUL GOGGINS**
### **NEGLIGENCE AGAINST DEFENDANT LOVE**

1.      Plaintiffs are both domiciled in the State of Missouri and are therefore citizens of the state of Missouri.

2.      At the present time, Defendant Calhoun Transport LLC ("Calhoun") is a foreign entity that has not maintained its Missouri registration, with its headquarters and principal place of business in Tennessee.

3.      Defendant Love is domiciled in the State of Tennessee and therefore a citizen of Tennessee.

4.      This court has original jurisdiction over the matter and parties pursuant to 28 USC § 1332 as there is complete diversity amongst the parties and the value in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Defendant Calhoun owned the 2004 Freightliner ("Freightliner") tractor-trailer Love was operating at the time of the collision.

6.      At all times relevant to this case, Defendant Love was an agent, joint venturer and/or employee (hereinafter to refer to statutory or otherwise) of Defendant Calhoun, and was acting within the course and scope of his agency and/or employment at the time of the collision.

7.      At the time of the collision referenced in this Complaint, Defendant Calhoun was registered with the Federal Motor Carrier Safety Administration as an interstate commercial motor carrier.

8.      Prior to March 21, 2016, Calhoun had applied for operating authority as a contract carrier to the Federal Motor Carrier Safety Administration.

9.      As of March 21, 2016, Calhoun had authority to operate as a contract carrier.

10.     As of March 21, 2016, Calhoun did not have authority to operate as a common carrier nor a broker.

11.     At all times relevant herein and at the time of this crash, Defendant Calhoun was a commercial motor carrier engaged in interstate commerce, transporting goods for hire throughout the United States.

12.     At all times relevant herein and at the time of this crash, Defendant Calhoun was acting individually and through its drivers, agents, servants, joint venturers, and/or employees,

each of whom were acting within the course and scope of their employment, agency, and/or joint venture with Defendant Calhoun.

13.     Defendant Calhoun, and its agents, servants, employees, and drivers, including Defendant Love at all relevant times set forth herein, were subject to the rules and regulations contained and set forth in Title 49, Code of Federal Regulations (Federal Motor Carrier Safety Regulations).

14.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

15.     In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety.  "Employee" includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle).  49 C.F.R. §390.5.

16.     At all times relevant to this case, Defendant Love was a driver of the Freightliner and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

17.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

3

18.     At all times relevant to this case, the tractor-trailer driven by Defendant Love was a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

19.     In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

20.     At all times relevant to this case, Defendant Calhoun was Love's "employer" as that term is defined by the Motor Carrier Safety Regulations.

21.     At the time of this incident and at all times herein mentioned, Defendant Love was operating the Freightliner as a driver for Defendants Calhoun.

22.     Defendant Calhoun's business as an interstate motor carrier requires drivers to transport goods.

23.     On or about March 21, 2016, at approximately 9:27 a.m., Plaintiff Paul Goggins was operating a 2008 International Harvest truck on southbound Interstate 55 in Cape Girardeau County, Missouri.

24.     At that time and place, Defendant Love was operating his semi in the right lane of southbound Interstate 55 at approximately 5 miles per hour.

25.     Because of Love's slow speed, Paul Goggins overtook and collided with the rear of Love's semi.

26.     Traffic between Love and Goggins prevented Goggins from seeing Love's semi traveling below the posted minimum until it was too late to avoid impact.

27.     Immediately after the collision, Love reported to police that he was having mechanical issues with his truck.

28.     Southbound Interstate 55 at the crash location is a much-traveled, open, and

4

publicly dedicated roadway and thoroughfare in the State of Missouri.

29.     Plaintiff Paul Goggins suffered and continues to suffer permanent and disabling injuries as a direct and proximate result of this collision.

30.     The negligence of Defendants directly and proximately, caused or contributed to cause injury to Plaintiff Paul Goggins's head, spine and leg.

31.     At the time of this crash, Defendant Love owed a duty to Plaintiff Paul Goggins to operate the Freightliner with ordinary care.

32.     At the time of this crash, Defendant Love breached said duty and negligently operated the tractor-trailer that caused this incident on the above-stated date and time by:

     a)     Driving on the interstate below the posted minimum speed limit;

     b)     Failing to activate emergency flashers;

     c)     Failing to keep a proper lookout;

     d)     Failing to take proper remedial action which could have avoided this collision or minimized the impact;

     e)     Failing to pull to the shoulder at the onset of mechanical problems;

     f)     Failing to exit the interstate at the onset of mechanical issues;

     g)     Operating the tractor-trailer without adequate training and experience;

     h)     Operating the tractor-trailer when not properly qualified to do so;

     i)     Driving while tired and/or fatigued.

33.     At least one of the negligent acts or omissions by Defendant Love, as described in the above paragraphs and the below paragraphs, was a direct and proximate cause, and caused or contributed to cause, the crash in question and the resulting injuries to Plaintiff Paul Goggins.

34.     As a direct and proximate result of the negligence of Defendant Love, Plaintiff Paul

Goggins was seriously injured as described herein and has sustained damages, pain and suffering, and loss of enjoyment of life, and will sustain damages, pain and suffering and loss of enjoyment of life in the future.

35.     Defendant Love knew or should have known that his conduct as described herein created a high degree of probability of injury.

36.     Defendant Love was not properly qualified to operate the tractor-trailer and did not have the required training and experience and was operating in violation of the law; this behavior and conduct was reckless and shows a complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff Paul Goggins to Aggravated (punitive) Damages.

37.     The operation of the tractor-trailer by Defendant Love and the manner in which it was operated on the public roadways, was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff Paul Goggins to Aggravated (punitive) Damages.

38.     The conduct of Defendant Love as described herein, specifically including violations of pertinent rules of the road and the Federal Motor Carrier Safety Regulations as listed within this Complaint, as well as other acts and omissions of as described herein, was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff Paul Goggins to Aggravated (punitive) Damages.

**WHEREFORE** Plaintiff Paul Goggins prays for judgment against Defendant Love in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff Paul Goggins for his injuries, plus Aggravated (punitive) Damages, and for such other relief this Court deems just and proper under the

circumstances.

## COUNT II – PAUL GOGGINS
## STATUTORY EMPLOYMENT/LOGO/LEASE LIABILITY AGAINST DEFENDANT CALHOUN TRANSPORT

1-38.   Plaintiff Paul Goggins repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above.

39.   Based upon all aforementioned allegations, Defendant Calhoun Transport is vicariously liable for the negligence of Defendant Love based upon the doctrines of statutory employment, logo, and/or lease liability.

40.   The conduct of Defendant Calhoun as described herein, was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff Paul Goggins to Aggravated (punitive) Damages.

**WHEREFORE** Plaintiff Paul Goggins prays for judgment against Defendant Calhoun Transport in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate plaintiff for his injuries, plus Aggravated (punitive) Damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT III – PAUL GOGGINS
## VICARIOUS LIABILITY AGAINST DEFENDANT CALHOUN TRANSPORT

1-40.   Plaintiff Paul Goggins repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above.

41.   At all times relevant, Defendant Love was acting in the course and scope of his agency and/or employment with Defendant Calhoun Transport

42.   Based upon the prior allegations, Defendant Calhoun Transport is vicariously liable

for the negligence of Defendant Love based upon the doctrines of agency and respondeat superior.

43.     The conduct of Defendant Calhoun as described herein, was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff Paul Goggins to Aggravated (punitive) Damages.

**WHEREFORE** Plaintiff Paul Goggins prays for judgment against Defendant Calhoun Transport in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate plaintiff for his injuries, plus Aggravated (punitive) Damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT IV – PAUL GOGGINS
## INDEPENDENT NEGLIGENCE AGAINST DEFENDANT CALHOUN TRANSPORT

1-43.   Plaintiff Paul Goggins repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were set forth herein.

44.     At all times relevant, Defendant Calhoun was operating as an interstate motor carrier pursuant to authority granted to it by the U.S. Department of Transportation.

45.     Throughout its existence, Defendant Calhoun has, or should have been, aware of the existence of the Federal Motor Carrier Safety Regulations.

46.     As an interstate motor carrier, Defendant Calhoun has a duty to follow and comply with the Federal Motor Carrier Safety Regulations.

47.     The various safety regulations included within Parts 390 – 397, of which Defendant Calhoun had a duty to follow include, but are not limited to, the following:

      a.   Defendant Calhoun had an independent duty to require observance by its drivers of any duty or prohibition imposed upon the drivers by the Federal Motor Carrier

Safety Regulations.  49 C.F.R. §390.11;

b.  Defendant Calhoun had a duty to not require or permit a driver, including
Defendant Love, to operate a commercial motor vehicle, while the driver's ability
or alertness is so impaired, or so likely to become impaired, through fatigue, illness,
or any other cause, as to make it unsafe for him/her to begin or continue to operate
the commercial motor vehicle.  49 C.F.R. §392.3;

c.  Defendant Calhoun had a duty to not allow or permit a driver, including Defendant
Love, to operate a commercial motor vehicle unless that person is qualified to drive
a commercial motor vehicle.  49 C.F.R. §391.11.;

d.  Defendant Calhoun had an independent duty not to aid, abet, encourage or require
any of its employees to violate the safety regulations contained within Chapter 390.
490 C.F.R. §390.13;

e.  Defendant Calhoun had an independent duty to prohibit its employees from driving
a commercial vehicle unless the employee had first completed and furnished to
Defendant Calhoun an application for employment that meets the requirements as
set forth in 49 C.F.R. §391.21(b);

f.  Defendant Calhoun had an independent duty to make investigations and inquiries
with respect to each driver it employs and to do so in the manner prescribed in 49
C.F.R. §391.23;

g.  Defendant Calhoun had an independent duty to obtain the motor vehicle record of
every driver it employs, including Defendant Love, at least once every twelve
months in order to determine whether that driver continues to meet the minimum

9

requirements for safe driving or is disqualified to drive a commercial motor vehicle. 49 C.F.R. §391.25;

h.  Defendant Calhoun had an independent duty to require each of its drivers, including Defendant Love, to furnish it with a list of all violations of motor vehicle traffic laws and ordinances of which he/she has been convicted in the preceding 12 months.  49 C.F.R. §391.27;

i.  Defendant Calhoun had an independent duty to prohibit its employees, including Defendant Love, from driving until the driver had successfully completed a road test and been issued a certificate of driver's road test.  40. C.F.R. §391.31;

j.  Defendant Calhoun had an independent duty to ensure that its drivers, including Defendant Love, were physically qualified to operate a commercial motor vehicle and that its drivers had undergone the necessary examinations in the required timeframes as set forth within the Federal Motor Carrier Safety Regulations.  40 C.F.R. §391 – Subpart E; and

k.  Defendant Calhoun had an independent duty to inspect, repair, and maintain, all of the motor vehicles subject to its control, including the motor vehicle operated by Defendant Love on the day of the aforementioned crash, and to ensure that the motor vehicle and all of its parts and accessories were in proper operating condition at all times, including at the time of the aforementioned crash.  40 C.F.R. §396.3.

48.  Defendant Calhoun had a duty to comply with the Federal Motor Carrier Safety Regulations including the specific aforementioned regulations.

49.  It is customary standard in the motor carrier industry to have in place an adequate

safety program administered by competent and adequately trained safety personnel to ensure that the motor carrier and its drivers are adhering to the Federal Motor Carrier Safety Regulations, including but not limited the specifically aforementioned regulations.

50.     That, at all times prior to the aforementioned collision, Defendant Calhoun failed to have in place an adequate safety program.

51.     As a result of its inadequate and/or inexistent safety program, Defendant Calhoun violated numerous Federal Motor Carrier Safety Regulations including, but not limited to the specifically aforementioned regulations prior to the aforementioned collision involving Plaintiff Paul Goggins.

52.     As a result of its inadequate and/or inexistent safety program, Defendant Calhoun allowed its drivers, including Defendant Love, to violate numerous Federal Motor Carrier Safety Regulations including, but not limited to the specifically aforementioned regulations prior to the aforementioned collision involving Plaintiff Paul Goggins.

53.     Defendant Calhoun's violation of numerous Federal Motor Carrier Safety Regulations, including the specifically aforementioned regulations created a danger to the health, welfare, and safety of the motoring public, including Plaintiff Paul Goggins.

54.     Defendant Calhoun was thereby negligent in that it failed to implement an adequate safety program and it violated numerous Federal Motor Carrier Safety Regulations, including but not limited to the specifically aforementioned regulations.

55.     Defendant Calhoun was thereby negligent in that it failed to implement an adequate safety program and it failed to ensure that its agents, employees and drivers, including Defendant Love, complied with the Federal Motor Carrier Safety Regulations, including but not limited to the specifically aforementioned regulations.

56.     As a direct and proximate result of the independent negligence of Defendant

Calhoun, Plaintiff Paul Goggins was injured and sustained damages and will continue to be damaged in the manners previously described in this Complaint.

57.     Defendant Calhoun knew or had information from which they, in the exercise of ordinary care, could have known that such conduct as described herein created a high degree of probability of injury to the motoring public such as Plaintiff Paul Goggins.

58.     The conduct of Defendant Calhoun as described herein, specifically including violations of Missouri state law and the various Federal Motor Carrier Safety Regulations was willful, wanton, and reckless, and shows complete indifference and conscious disregard for the safety of the motoring public, so as to entitle Plaintiff Paul Goggins to Aggravated (punitive) Damages.

59.     Because of Defendant Calhoun's willful, wanton, and reckless behavior, and for their indifference and conscious disregard for the safety of the motoring public, aggravated (punitive) damages are appropriate in this action in order to punish Defendant Calhoun and to deter others from similar conduct.

60.     Defendant Calhoun's reckless and intentional behavior, and their complete indifference and conscious disregard for the safety of the motoring public, directly and proximately caused the wreck and the resulting injuries to Plaintiff Paul Goggins described herein.

**WHEREFORE** Plaintiff Paul Goggins prays for judgment against Defendant Calhoun in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff Paul Goggins for his injuries, plus Aggravated (punitive) Damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT V – PAUL GOGGINS
## DIRECT NEGLIGENCE AGAINST DEFENDANT CALHOUN TRANSPORT BASED UPON NEGLIGENT HIRING/RETENTION

1-60.    Plaintiff Paul Goggins repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were fully incorporated in this count.

61.    At all times prior to the aforementioned collision, Defendant Calhoun had a duty, imposed by law and regulation, to diligently and adequately screen potential drivers to the extent mandated by the Federal Motor Carrier Safety Regulations.

62.    Such duties include, but are not limited to:

a)    To obtain a completed employment application before permitting an agent, servant, and/or employee drive its commercial motor vehicle. 49 C.F.R. §391.21;

b)    To investigate the agents, servants, and/or employee's driver's employment record during the preceding three years by all reasonable means. 49 C.F.R. §§391.23(a)(2), 391.23(c);

c)    To inquire into the agent's, servant's, and/or employee's driving record within 30 days after employment begins. 49 C.F.R. §391.23(a);

d)    To require a successfully completed road test before commencing employment, and permitting the applicant, agent, servant, and/or employee to drive a commercial motor vehicle. 49 C.F.R. §391.31(a);

e)    To investigate the driver's safety performance history with Department of Transportation regulated employer during the preceding three years. 49 C.F.R. §391.23(2);

f)    Ensure that its driver was physically qualified to operate a tractor-trailer and had a valid and current DOT medical examiner's certificate. 49 C.F.R. §391.41; and

g)    Ensure that its driver had no current diagnosis of high blood pressure likely to interfere with the ability to operate a commercial motor vehicle safely.  49 C.F.R. §391.41(b)(6).

63.    Defendant Calhoun had a duty to comply with all of the above and below listed Laws, Federal Regulations, Codes, and/or Missouri Statutes, so as to protect the general public, including the Plaintiff Paul Goggins, from the unsafe operation of commercial motor vehicles by its drivers.

64.    Defendant Love was unqualified to operate a commercial motor vehicle due to his driving history, inexperience, lack of skill, lack of training, lack of knowledge, and physical medical condition.

65.    Because of Defendant Love's aforementioned inadequacies, Defendant Calhoun should not have hired him to operate a commercial motor vehicle.

66.    Defendant Calhoun knew, or through the exercise of ordinary care should have known that Defendant Love was unqualified to safely operate a commercial motor vehicle.

67.    By failing to properly and adequately screen and investigate its drivers, including Defendant Love, before and during employment, Defendant Calhoun violated numerous Federal Motor Carrier Safety Regulations, including but not limited to those specifically identified in this count.

68.    Had Defendant Calhoun obeyed the Federal Motor Carrier Safety Regulations, including but not limited to those specifically identified in this count, it could have learned that Defendant Love was unqualified to safely operate a commercial motor vehicle.

69.    Defendant Love's negligent actions on the day of the collision with Plaintiff were consistent with, related to, and a product of his aforementioned inadequacies in operating a commercial motor vehicle.

14

70.     Defendant Calhoun's actions and omissions in hiring Defendant Love, including their violations of the Federal Motor Carrier Safety Regulations, was the proximate cause of the injuries and damages sustained by Plaintiff Paul Goggins resulting from the aforementioned motor vehicle collision.

71.     Defendant Calhoun's actions and omissions in hiring Defendant Love, including their violations of the Federal Motor Carrier Safety Regulations were willful, wanton, and reckless, and demonstrated a complete indifference and conscious disregard for the law and for the safety of others, including Plaintiff Paul Goggins.

72.     Defendant Calhoun's willful, wanton, and reckless behavior evidenced a complete indifference and conscious disregard for the safety of the motoring public and Aggravated (punitive) Damages are appropriate in this action in order to punish Defendant Calhoun and to deter others from similar conduct.

**WHEREFORE** Plaintiff Paul Goggins prays for judgment against Defendant Calhoun in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff Paul Goggins for his injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

**COUNT VI – PAUL GOGGINS**
**DIRECT NEGLIGENCE AGAINST DEFENDANT CALHOUN TRANSPORT BASED UPON NEGLIGENT TRAINING**

1-72. Plaintiff Paul Goggins repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were fully incorporated in this count.

73.     Defendant Calhoun owed the general public, including Plaintiff Paul Goggins, a duty to properly train its drivers, including Defendant Love, on the safe operation of a tractor-

trailer.

74.     Defendant Calhoun failed to properly instruct Defendant Love on the safe operation of a tractor-trailer.

75.     Defendant Calhoun owed the general public, including Plaintiff Paul Goggins, a duty to properly train its drivers, including Defendant Love, on the safety regulations set forth in the Federal Motor Carrier Safety Regulations.

76.     At all times prior to the aforementioned collision, Defendant Calhoun had a duty, imposed by law and regulation, to diligently and adequately screen potential drivers to the extent mandated by the Federal Motor Carrier Safety Regulations.

77.     Such duties include, but are not limited to:

        a)      To require and verify that its drivers pass a knowledge and skills test as prescribed by the Federal Motor Carrier Safety Regulations.  49 C.F.R. §380.109 and 49 C.F.R. §380.509;

        b)      To train its drivers on the Federal Motor Carrier Safety Regulations pertaining to medical certification, medical examination procedures, general qualifications, responsibilities, and disqualifications.  49 C.F.R. §380.503;

        c)      To ensure that its drivers have been properly trained and to show proof of that training with a training certificate. 49 C.F.R. §380.505;

78.     Defendant Calhoun had a duty to properly instruct its drivers, including Defendant Love on the rules and regulations as contained in Part 392 of the Federal Motor Carrier Safety Regulations, which pertain to the safe operation of a commercial motor vehicle.

79.     Defendant Calhoun failed to properly instruct Defendant Love on the Federal Motor Carrier Safety Regulations, including those specifically referenced in this count.

80.     Defendant Calhoun owed the general public, including Plaintiff Paul Goggins,

a duty to provide ongoing safety courses to its drivers, including Defendant Love.

81.     Defendant Calhoun failed to provide adequate continuing safety courses to Defendant Love.

82.     Defendant Calhoun had a duty to comply with all of the above and below listed duties, so as to protect the general public, including the Plaintiff Paul Goggins, from the unsafe operation of commercial motor vehicles by its drivers.

83.     Defendant Calhoun breached its duty to the general public, including the Plaintiff Paul Goggins, by its failing to properly train Defendant Love, Defendant Calhoun' tractor-trailer driver, who was unqualified, incompetent and should not have been permitted to operate a tractor-trailer.

84.     Based on Defendant Love's driving history, inadequate experience, and training, Defendant Calhoun knew or had information from which defendant, in the exercise of ordinary care, should have known, that its driver operating its vehicle created a high degree of probability of injury to other persons operating or traveling in motor vehicles on public roads, streets and highways.

85.     Defendant Calhoun was negligent in failing to properly train its drivers, including Defendant Love, on the safe operation of a commercial motor vehicle and the Federal Motor Carrier Safety Regulations.

86.     Defendant Calhoun was negligent in failing to provide continuing education on the safe operation of a commercial motor vehicle and on the Federal Motor Carrier Safety Regulations.

87.     Defendant Love's aforementioned negligent actions and/or inactions were consistent with the fact that Defendant Calhoun failed to properly train him in the safe operation of a commercial motor vehicle and/or the adherence to the Federal Motor Carrier Safety

17

Regulations.

88.     These actions and omissions of Defendant Calhoun relating to this crash were willful, wanton, and reckless, and demonstrated a complete indifference and conscious disregard for the law and for the safety of others, including Plaintiff Paul Goggins.

89.     Due to Defendant Calhoun's willful, wanton, and reckless behavior, and for its complete indifference and conscious disregard for the safety of the motoring public, Aggravated (punitive) Damages are appropriate in this action in order to punish Defendant Calhoun and to deter others from similar conduct.

90.     Plaintiff Paul Goggins's injuries were directly and proximately caused by Defendant Calhoun's breach of and failure to comply with its duty to properly train Defendant Love, its tractor-trailer driver.

**WHEREFORE** Plaintiff Paul Goggins prays for judgment against Defendant Calhoun in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff Paul Robert for his injuries, plus Aggravated (punitive) Damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT VII – PAUL GOGGINS
## DIRECT NEGLIGENCE AGAINST DEFENDANT CALHOUN TRANSPORTATION INC. BASED UPON NEGLIGENT SUPERVISION

1-90.   Plaintiff Paul Goggins repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were fully incorporated in this count and further states:

91.     Defendant Calhoun owed the general public, including Plaintiff Paul Goggins, a duty to continuously evaluate its drivers' performance, including through supervision, and to

discharge an incompetent or unsafe driver before he/she injured the public or property.

92.     Defendant Calhoun had a duty to not require or permit a driver, including Defendant Love, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.  49 C.F.R. §392.3.

93.     Defendant Calhoun had a duty to inquire into the motor vehicle record of its drivers and give "great weight" to violations such as speeding or reckless driving.  49 C.F.R. §391.25.

94.     Defendant Calhoun had a duty to ensure that its drivers were continuously physically qualified to safely operate a tractor-trailer. 49 C.F.R. §391.41, 391.43.

95.     Defendant Calhoun had a duty to maintain a driver qualification file for each driver it employs.  49 C.F.R. §391.51

96.     Defendant Calhoun had a duty to maintain a driver investigation history file for each driver it employs.  49 C.F.R. §391.53.

97.     Defendant Calhoun had a duty to not allow or permit its on-duty drivers to be possession of drugs as listed in 49 C.F.R. §392.4(a).

98.     Defendant Calhoun had a duty to not schedule a run, nor permit, nor require the operation of any commercial motor vehicle between points in such a period of time as would necessitate the commercial vehicle being operated at speeds greater than those prescribed by law.  49 C.F.R. §392.6.

99.     Defendant Calhoun had a duty to comply with all of the above and below listed duties, Rules, Regulations and codes, so as to protect the general public, including Plaintiff Paul Goggins, from the unsafe operation of commercial motor vehicles by its drivers.

100.   Defendant Calhoun breached its above listing duties to the general public, including the Plaintiff Paul Goggins, by failing to properly supervise Defendant Love, Defendant Calhoun's tractor-trailer driver, who was unqualified, incompetent and should have been discharged prior to this crash.

101.   Based on Defendant Love's driving history, lack of supervision and continued retention by his employer, Defendant Calhoun knew or had information from which Defendant Calhoun, in the exercise of ordinary care, should have known, that its driver operating its vehicle created a high degree of probability of injury to other persons operating or traveling in motor vehicles on public roads, streets and highways.

102.   These actions and omissions of Defendant Calhoun relating to this crash were willful, wanton, and reckless, and demonstrated a complete indifference and conscious disregard for the law and for the safety of others, including Plaintiff Paul Goggins.

103.   Defendant Calhoun's willful, wanton, and reckless behavior, and for its complete indifference and conscious disregard for the safety of the motoring public, Aggravated (punitive) Damages are appropriate in this action in order to punish Defendant and to deter others from similar conduct.

104.   Plaintiff Paul Goggins's injuries were directly and proximately caused by Defendant Calhoun' breach of and failure to comply with its duty to properly train Defendant Love, its tractor-trailer driver.

**WHEREFORE** Plaintiff Paul Goggins prays for judgment against Defendant Calhoun in a sum in excess of Seventy-Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate plaintiff for his injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

## COUNT XVIII – KATHY GOGGINS
## LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

1-104.   Plaintiff Kathy Goggins repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were fully incorporated in this count.

105.   At all times relevant herein, Kathy Goggins was and is the lawfully wedded spouse of Plaintiff Paul Goggins.

106.   As a direct and proximate result of the negligent acts and omissions of Defendants Love and Calhoun, as set forth above, which resulted in the aforementioned injuries to her husband Paul Goggins, Plaintiff Kathy Goggins has lost the care, comfort, society, companionship, financial support, and consortium of her husband and will continue to do so in the future.

107.   These actions and omissions of all Defendants relating to this crash were willful, wanton, and reckless, and demonstrated a complete indifference and conscious disregard for the law and safety of others.

**WHEREFORE** Plaintiff Kathy Goggins prays for judgment against each Defendant in excess of Seventy Five Thousand Dollars ($75,000) exclusive of costs and interest, as is fair and reasonable to compensate Plaintiff Kathy Goggins for her injuries, plus aggravated (punitive) damages, and for such other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

ARMBRUSTER, DRIPPS, WINTERSCHEIDT & BLOTEVOGEL

BY:                */s/ Charles W. Armbruster III*
                      Roy C. Dripps #29789
                      Charles W. Armbruster III #40027
                      Michael T. Blotevogel #55030
                      51 Executive Plaza Ct.
                      Maryville, IL 62062
                      Phone:      800/917-1529
                      Fax:         800/927-1529
                      royd@adwblaw.com;
                      charlesa@adwblaw.com
                      mikeb@adwblaw.com
                      ***Attorneys for Plaintiff***